Anibal CONTE, Libelant-Appellee-Appellant,

v.

FLOTA MERCANTE DEL ESTADO, Respondent-Appellant-Appellee.

No. 221, Docket 25813.

United States Court of Appeals Second Circuit.

Argued March 2, 1960.

Decided April 1, 1960.

Donald S. Sherwood, New York City (Jerome Golenbock and Cohen & Cohen, New York City, on the brief), for libel-ant-appellee-appellant.

Walter X. Connor, New York City (George T. Delaney, John D. Caemmerer, and Kirlin, Campbell & Keating, New York City, on the brief), for respondent-appellant-appellee.

Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

Conte, an Argentine seaman, and Flota Mercante del Estado, an Argentine corporation, owner of the S.S. Rio de la Plata, both appeal from a judgment in a suit in admiralty brought by Conte in the Southern District of New York against the vessel and her owner, 28 U.S.C. § 1333. The libel sought damages for personal injuries sustained by Conte while serving aboard the vessel, and wages and penalty wages under 46 U.S.C.A. § 596. Respondent urges that the District Court abused its discretion in retaining the suit rather than remitting libelant to his remedies in Argentina and that the District Judge's finding that libelant was free from contributory negligence was clearly erroneous; in these respects we affirm. We likewise affirm the denial of penalty wages. Respondent asserts the award of damages for the in-jury was excessive; libelant claims it was insufficient. Finding merit in certain contentions raised by each appellant but being unable to arrive at a correct award on the present record, we remand the case to the District Court for re-determination of such damages.

Conte, a citizen of Argentina, signed articles on August 7, 1957, in Buenos Aires, for a voyage to New York and return on the Rio de la Plata, as a mechanic-plumber. On August 29, when the vessel was two days from New York, he suffered a serious injury under the circumstances we shall now describe. On inspecting the fresh water pump Conte found the oil was low. He notified the Third Engineer, Solano. The two men proceeded to check the pump. This contained two pistons operating up and down from a crankshaft. Solano first checked the forward piston by inserting a wire in an oil hole; he found this was clear. In order to permit a similar check of the after piston Solano went to the control board and turned on the motor that would raise the after and lower the forward piston. While Solano was doing this, Conte inserted his hand in the pump housing. The forward piston fell and amputated Conte's right hand up to the wrist, leaving only the thumb. After immediate treatment on the vessel, Conte underwent repeated surgery in New York. This culminated in the fusing of his thumb on the wristbone so that he could be fitted with a prosthetic hand. Although this will assist Conte in taking care of himself, the hand is useless for manual labor.

The libel, filed on December 31, 1957, sought recovery for the injury, based on negligence, breach of the shipowner's warranty of seaworthiness and failure to afford maintenance and cure. A fourth claim for relief alleged that respondent had failed to pay libelant his wages to the end of the voyage and sought damages of $25,000. There was no reference to the penalty wage statute, 46 U.S.C.A. § 596. However, on libelant's examination before trial, libelant's counsel stated that such a claim was being made and

the libel was treated at the trial as including this. Certain pretrial steps were taken and a note of issue and statement of readiness was filed in May, 1958.

After further pretrial proceedings, respondent moved, in December, 1958, to dismiss the libel on the ground of *forum non conveniens* in that the suit was between Argentine citizens, arose out of injuries sustained on an Argentine ship on the high seas and was governed by Argentine law. Judge McGohey, in a brief opinion, Conte v. Rio De La Plata, D.C.1959, 169 F.Supp. 164, denied the motion, as did Judge Dimock when it was renewed at the trial. Judge McGohey rested his denial on the presence in New York of doctors and technicians who were essential witnesses, on the ready availability of the eye-witnesses to the accident and the master and other officers of the vessel since they were still employed by respondent whose ships made regular runs to New York, on respondent's unexplained delay in waiting until the eve of trial before moving to dismiss, and on the existence of the penalty wage claim.[1]

■ Respondent concedes as it must that its objection does not go to the jurisdiction of the District Court, The Belgenland, 1885, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152; Lauritzen v. Larsen, 1953, 345 U.S. 571, 575, 589–590, 73 S. Ct. 921, 97 L.Ed. 1254, but only to whether the District Court abused its discretion in retaining this. The question raised is an important one, as to which an able commentator chides us, "No rules to guide discretion have been formulated, and the cases, although the better ones point to and assist in the definition of

standards, have not been lacking in confusion." Bickel, Forum Non-Conveniens in Admiralty, 35 Cornell L.Q. 12, 27 (1949). It is *prima facie* undesirable that an overburdened District Court should conduct a trial in a personal injury action between foreigners, with all the evidence on the issue of liability and much of the evidence on damages given in a foreign tongue by witnesses equally or more available in the foreign forum, and with reliance having to be placed on expert testimony as to the governing law, when, as here, an adequate remedy is available in the country where both parties reside and to which the plaintiff will return. Moreover, try as we may to apply the foreign law as it comes to us through the lips of the experts, there is an inevitable hazard that, in those areas, perhaps interstitial but far from inconsequential, where we have no clear guides, our labors, moulded by our own habits of mind as they necessarily must be, may produce a result whose conformity with that of the foreign court may be greater in theory than it is in fact. See Mr. Justice Holmes in Diaz v. Gonzalez, 1923, 261 U.S. 102, 105, 43 S.Ct. 286, 67 L.Ed. 550. Indeed, we fear we may have exactly such a case in the award of damages here. The testimony of the New York surgeon and technician was not controversial and could easily have been taken by deposition; indeed, libelant's own appearance was the best proof of the gravity and permanence of his injury. Neither do we see any flaw in respondent's contention that the District Court might have retained jurisdiction of the wage claim while dismissing the personal injury claim, as was done in Giatilis v. Steam Tanker Darnie, D.C.D.

---

1. Lakos v. Saliaris, 4 Cir., 1940, 116 F. 2d 440, 444–445, held it was mandatory to exercise jurisdiction in a suit by a foreign seaman against a foreign ship under a related wage statute, 46 U.S.C.A. § 597, agreeing on this point with the dissenting opinion of Chief Judge Biggs in The Estrella, 3 Cir., 1938, 102 F.2d 736. If this view, which has been followed by most District Courts, see Bickel, Forum Non-Conveniens in Admiralty, 35 Corn. L.Q. 12, 24 (1949), is sound, the cross-

reference to § 596 in § 597 would also make it mandatory to exercise jurisdiction when a *bona fide* claim under § 596 is asserted by a foreign seaman against a foreign vessel. See The Sonderborg, 4 Cir., 47 F.2d 723, 727, certiorari denied Akties, Dampskibsselskabet Donneborg v. Mikkelsen, 1931, 284 U.S. 618, 52 S.Ct. 7, 76 L.Ed. 527; The Fletero v. Arias, 4 Cir., 206 F.2d 267, 271, certiorari denied, 1953, 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398.

Md.1959, 171 F.Supp. 751, 1959 A.M.C. 1248. However, respondent presented no explanation of its failure to move for dismissal until libelant had expended both time and money and the suit was about to be tried. We therefore cannot now find the retention of jurisdiction to have been an abuse of discretion, although we assuredly would not have found a dismissal of the personal injury claim to be.

At the trial libelant withdrew his claim for maintenance and cure. Judge Dimock found respondent had been negligent and libelant had not been. Initially he awarded libelant $60,000 for loss of earning power plus hospital and medical bills, the cost of the present and future prosthetic hands and gloves and, apparently, a small item for accrued wages. He declined to make an allowance for the cost of the cosmetic hand and glove with which libelant had also been fitted, for "mutilation," or for counsel fees, and he denied the penalty wage claim. The attention of the trial judge having been drawn to this Court's decision in Alexander v. Nash-Kelvinator Corp., 1958, 261 F.2d 187, 191, requiring that a judge to whom a personal injury case has been tried shall make findings as to the elements of damage sufficient so that "on the appeal the appellate court should have some knowledge of the basis or theory upon which the trial judge acted," he reduced the $60,000 allowance for loss of earnings to $43,444 and explained orally how he reached that figure.[2]

It is agreed that the rights of the parties are governed by Argentine law. American Law Institute, Restatement of the Conflict of Laws, § 405. Article 1109 of the Argentine Civil Code provides that "Every person who carries out a deed which because of his fault or negligence, inflicts damage on another, is bound to repair the damage." Article 1111 says that when a person suffers damage only because of his own fault he has no right to recover. Respondent's expert testified that the Argentine courts, "reasoning with these two articles," have decided that when both parties have been negligent, the injured party "can recover reduced damages in the proportion of his own fault."

■ Respondent does not contend the District Judge's finding of negligence was clearly erroneous. However, it asks us under that standard to reverse the judge's finding that Conte was not negligent, since, as it claims, his manual exploration of the inside of the pump housing could accomplish nothing. That may be, but libelant was not an expert engineer and we cannot hold that the District Judge, who heard Conte and Solano, was clearly in error in finding Conte free from negligence.

We come therefore to the amount of damages for the injury. This, as in the case of liability, must be determined in accordance with Argentine law. American Law Institute, Restatement of the Conflict of Laws, § 412.

### A. Loss of Earning Power.

■■ The element of damage which is largest in amount and most controversial is Conte's loss of earning power. Respondent's expert conceded that, under the Argentine Civil Code, Conte was entitled "to collect all his future earnings that he will be deprived of as a result of this injury." He gave no testimony as to how the Argentine courts would make this determination. Failing this, we must make the assumption, fictitious though respondent claims it to be, that they would approach the issue as we would. We agree with a number of criticisms of the District Judge's computation made by each of the appellants. While we would have power to make the recomputation ourselves, the record does not give us the tools. We shall therefore

2. Although Alexander v. Nash-Kelvinator Corp., supra, was a civil action governed by Fed.R.Civ.Proc. 52(a), 28 U.S.C., the doctrine of McAllister v. United States, 1954, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L. Ed. 20, assimilating the scope of review in admiralty to that under Rule 52(a), would seem to make the principle of the Alexander case applicable to personal injury claims tried in admiralty.

indicate what we conceive to be the proper method and remand the case, with leave to the parties to introduce such further evidence on the subject as they are advised. The propriety of taking that course on an appeal in admiralty is sustained by such cases as Boston Insurance Co. v. City of New York, 2 Cir., 1942, 130 F.2d 156; The Innerton, 5 Cir., 1944, 141 F.2d 931, 933; Smith v. Acadia Overseas Freighters Ltd., 3 Cir., 1953, 202 F.2d 141; and Dixon v. United States, 2 Cir., 1955, 219 F.2d 10, 18.

■ The general principle is easily stated. The objective is to place the libelant in the same economic position as would have been his if the injury had not occurred. We seek to accomplish this goal by a formula which, stated in an oversimplified form, consists of determining what libelant's annual earning power would have been but for the injury, deducting what it will be thereafter, multiplying the result by libelant's expectancy, and discounting the product to present value. We recognize the delusive exactness of all this since, among other defects, life expectancies are averages and the formula assumes what we know to be usually contrary to the fact, namely, that the injured party will be fully employed; but it is the best we have. Difficulties come in applying the formula to a specific case and these are enhanced when a depreciating foreign currency enters the equation.

■ (1) *Normal future annual earning power.* In order to determine libelant's normal future annual earning power the District Judge looked, appropriately enough, to what he had been earning in the past. The largest element was what Conte had received as wages. The District Judge determined this by taking the 5,708 pesos which Conte had received for the 29-day voyage on which he was injured, dividing the daily average of 197 pesos by the exchange rate of 40 pesos per dollar prevailing at the time of the injury, and multiplying the quotient, $5 per day, by 360 to obtain an annual wage in dollars. This was too much a keyhole view in the absence of

evidence that Conte could reasonably expect employment as a seaman for 360 days a year. See Porello v. United States, 2 Cir., 1946, 153 F.2d 605, 608, affirmed in part and reversed in part sub nom. American Stevedores, Inc. v. Porello, 1947, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011. There was evidence that in the 387 days from July 28, 1956 to September 7, 1957 Conte had earned 52,846 pesos or at the rate of some 50,000 pesos per annum as against the 72,000 produced by the judge's method. Conte objects to the use of this on the ground that the 387 days included 100 when he was hospitalized and could not earn extra compensation, which on some occasions equalled or exceeded his base pay. This objection could be met by deducting the days of such disability on the one side and the payments received for them on the other and translating the result to an annual basis, although this might be somewhat too favorable to Conte. Alternatively the parties may be able to produce evidence of Conte's earnings for a period less afflicted by abnormalities (although in utilizing figures reaching far into the past changes in the wage level due to depreciation of the peso would have to be taken into account) or as to the number of days of employment per annum which Conte could reasonably have expected but for his injury.

Conte protests the District Court's failure to take into account that a part of his wages was an addition of 15% to his base pay because of his 15 years of service, an allowance which would increase by 5 percentage points each 5 years. Although the evidence as to the nature of this arrangement was scanty, there was enough so that this item should be considered unless respondent offers contrary proof.

A further element of earning power claimed by Conte was the value of his board and lodging aboard ship. In the absence of any substantial evidence on this subject the District Judge estimated this at $2 per day. Respondent attacks this on the basis that Conte's food allowance on the Rio de la Plata was 12 pesos

a day on the purser's testimony and 20 pesos on his own. These figures would not be conclusive since the allowance was simply a bookkeeping entry, first added to and then deducted from Conte's pay; but Conte has the burden of showing the value of the food was greater. It is not apparent that Conte's lodging aboard ship had any pecuniary value since he was married and had two children and presumably was thus required to maintain a home in Buenos Aires in any event.

(2) *Earning power after the injury.* On the basis of his personal observation, the District Judge properly rejected respondent's claim that there was no evidence that Conte could not still be fully employed. Libelant's position was equally extreme, namely, that he could earn nothing, having been rendered unfit for manual labor and lacking education. With the case in this posture, the judge took a figure of a dollar a day. Libelant does not complain of this and respondent is hardly in a position to do so here, although it is free to offer further evidence on the remand. For reasons that will appear in item (5) below, it will be more convenient to state this figure in pesos.

■ (3) *Life expectancy.* Libelant's life expectancy was determined on the basis of United States tables of mortality. The District Judge was given no alternative on the record before him, although Argentine tables would be more appropriate if reliable actuarial statistics exist. It is also proper to consider whether Conte, who was 37 at the date of his injury, could expect to be employed as a seaman for his entire expectancy. For, in case of permanent disability, "the probable duration of plaintiff's earning capacity will be the proper measure." Harper & James, The Law of Torts, p. 1317, see fn. 6. See Porello v. United States, supra, 153 F.2d at page 608; Southern Pacific Co. v. Guthrie, 9 Cir., 1949, 180 F.2d 295, 303, affirmed on rehearing, 9 Cir., 186 F.2d 926, certiorari denied 1951, 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343; Wetherbee v. Elgin, Joliet & Eastern Ry. Co., 7 Cir., 1951, 191 F.2d 302, 310.

■ (4) *Discount to present value.* The District Judge used a 3% factor for discounting to present value. His decision antedated the second opinion in Alexander v. Nash-Kelvinator Corp., 2 Cir., 1959, 271 F.2d 524, 527, where this Court stated that under present circumstances this factor "should be not less than 4 per cent." In theory the discount factor should be whatever an Argentine court would apply; if there is any reliable evidence on this, the parties are free to offer it. There is no merit to libelant's contention that no discount should be applied since respondent failed to prove the Argentine courts would do so; in the absence of evidence we will assume the principle that money in hand is worth more than money to be received over 30 years applies south of the equator as well as north. The discount should not, of course, be applied to periods antedating judgment.

■ (5) *Rate of exchange.* At the date of the injury the peso exchanged at the rate of 40 to the dollar; by the time of the trial the rate of exchange had declined to 66; and we take notice that it is now around 80. The District Judge made his conversion at the rate of exchange prevailing at the date of the injury. The Federal rule, Die Deutsche Bank Filiale Nurnberg v. Humphrey, 1926, 272 U.S. 517, 47 S.Ct. 166, 71 L.Ed. 383, is that when an obligation is governed by foreign law, the conversion from the foreign currency into dollars is to be made at the rate of exchange prevailing at judgment. In Shaw, Savill, Albion & Co. v. The Fredericksburg, 2 Cir., 1951, 189 F.2d 952, 955, we applied that rule in admiralty to a collision in British territorial waters. In The Gylfe v. The Trujillo, 2 Cir., 1954, 209 F.2d 386, where there had been a collision between a Norwegian and a Panamanian ship on the high seas, we made the conversion as of the date of the accident; the rationale of the distinction was that the claim in The Gylfe arose under the

general maritime law which was considered a part of the law of the forum and was thus created by American rather than foreign law. The rule of the Shaw case is applicable here since although the accident was at sea, liability is governed by Argentine law.

■ None of these authorities was called to the District Judge's attention or, for that matter, to ours. The Judge justified his conversion at the date of the injury on the ground that it was "fair to assume that if there had been any depreciation in the Argentine pesos since then [the accident], there has been a corresponding increase in the rate" of wages. We cannot assume this has happened with seamen's wages in Argentina —any more than it has with all salaries in this country. However, it likewise cannot be assumed that the wages of Argentine seamen have been static while the peso has declined 100% vis-a-vis the dollar. Evidence on this should be taken and properly applied. To do so is in no way inconsistent with Die Deutsche Filiale Nurnberg Bank v. Humphrey. The conversion is made at the rate prevailing at the date of judgment, but we determine the amount to be converted as would the foreign court.

A related question arises from libelant's contention that there was an arrangement whereby on arrival in New York he was entitled to receive 70% of his accrued peso earnings in dollars at the official rate of 18 pesos to the dollar. He insists that his normal earning power for the rest of his life should be computed on this basis. Despite the enormous effect this contention has on the recovery, the evidence with respect to this arrangement is as unsatisfactory as the rest. Apparently there is no dispute that libelant was paid on this basis during the voyage in question and indeed that he had been for some time. But both parties have left us in the dark on such vital matters as whether this rested on contract, regulation or mere custom, to what extent the value of the arrangement was decreased by dollar expenses of Conte's in New York, whether corre-

sponding arrangements were made on other runs, how certain Conte was to be kept on the New York run, and to what degree such arrangements have been or will be adhered to in the light of the decline of the peso. The question, of course, is closely interrelated with that discussed in the preceding paragraph since if a considerable part of the peso wages of Argentine seamen is tied to more stable currencies, there would be proportionately less tendency for the peso compensation to increase as the peso depreciated.

### B. Other Elements of Damage.

Libelant protests the denial of three other claimed elements of damage which we have mentioned above. The first was a claim for damages for mutilation, in addition to loss of earning power. Respondent's expert testified the Argentine law awarded this only when there had been what he termed *"criminum dilectum"* [sic], which we understand to mean a delict committed with something akin to *mens rea;* clearly there was no evidence of this. The second was an allowance for the initial cost and renewal of a device simulating a human hand, which had been ordered by the surgeon and had some functional in addition to its cosmetic value; we find nothing in the testimony of the experts to indicate this would not be allowed under Argentine law. Hence this allowance should be made. The third, and the only one requiring discussion, was an allowance for counsel fees.

Libelant's claim here relates to Article 221 of the Argentine Code of Civil and Commercial Procedure. While the first paragraph of this article says the defeated party has to pay all the expenses of the prevailing one, a second paragraph entitles the judge to dispense with this in whole or in part, provided only that he state the reasons for doing so in his judgment. Libelant's expert claimed the latter paragraph had been repealed; but the text of the alleged repealing act was not offered. If the District Judge had chosen not to credit libelant's expert and to exercise discretion against the award

of counsel fees, we surely would not say he was wrong. Apparently, however, he did not decide as between the two experts but determined that on this point he would apply the law of the forum whatever the Argentine law might be.

■■■■■ If provision for recovery of counsel fees had been made in an Argentine statute outlining the elements compensable in seamen's or perhaps in all personal injury actions, we should doubtless give effect to this as an integral part of the claim, cf. Bournias v. Atlantic Maritime Co., 2 Cir., 1953, 220 F.2d 152; but here the provision is a general one and is not even in the Civil Code which creates the right of action for tort but in the Code of Civil and Commercial Procedure. The right to interest on a recovery for tort prior to judgment is generally determined by the law that creates the claim. Maynard v. Eastern Air Lines, Inc., 2 Cir., 1949, 178 F.2d 139, 13 A.L.R.2d 646; Frasier v. Public Service Interstate Transp. Co., 2 Cir., 1958, 254 F.2d 132. See Annotation 68 A.L.R. 2d 1337. On the other hand, no authority is needed for the proposition that a court will tax ordinary court costs in accordance with its own practice rather than that of the state where the claim arose. A similar rule has been applied as to the fees of a guardian *ad litem*. Gandall v. Fidelity & Casualty Co., D.C.E.D.Wis. 1958, 158 F.Supp. 879, although there the result was to make rather than withhold the allowance. We think the same rule should govern with respect to the fees of counsel, also officers of the court.

As pointed out in Goodhart, Costs, 38 Yale L.J. 849, 872–77 (1929), the American practice of generally not including counsel fees in costs was a deliberate departure from the English practice, stemming initially from the colonies' distrust of lawyers and continued because of a belief that the English system favored the wealthy and unduly penalized the losing party. On a matter so intimately related to judicial administration the forum will follow its own policy. Accordingly, we affirm the ruling of the District Judge denying an allowance for them.

### C. Penalty Wages.

■■■■■ We come finally to libelant's claim for penalty wages under 46 U.S.C. A. § 596, quoted in the margin.[3] Libelant claimed that he was discharged from the vessel on September 4, 1957, that he was then paid only the 70% of his earned wages which were payable in dollars, that the remaining 30%, some $65, had never been paid, and that because of this failure he was entitled to $15,174.12 in penalty wages as of December 15, 1959. Respondent countered and the District Judge held that libelant had not been discharged since under Argentine law he was entitled to his regular wages until he was repatriated. He also found there was a *bona fide* dispute as to the precise amount due. Section 596 "confers no right to recover double wages where the delay in payment of wages due was not in some sense arbitrary, willful, or unreasonable." McCrea v. United States, 1935, 294 U.S. 23, 30, 55 S.Ct. 291, 294, 79

3. "The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage. This section shall not apply to fishing or whaling vessels or yachts."

L.Ed. 735. Respondent's delay was not of that nature.

The judgment is reversed and the cause remanded to the District Court for a recomputation of libelant's damages for his personal injury in a manner consistent with this opinion. No costs on appeal.