**OCEAN SHIP SUPPLY, LTD., A Canadian Corporation, Appellant,**

v.

**MV LEAH, her engines, tackle, apparel, furniture, etc., and Leon Finance Company, S.A., Appellees.**

No. 82–1433.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1983.

Decided March 13, 1984.

William H. Vaughan, Jr., Charleston, S.C. (Grimball, Cabaniss, Vaughan & Robinson, Charleston, S.C., on brief), for appellant.

Gordon D. Schreck, Charleston, S.C. (Buist, Moore, Smythe & McGee, Charleston, S.C., on brief), for appellees.

Before WINTER, Chief Judge, HALL, Circuit Judge and BRYAN, Senior Circuit Judge.

ALBERT V. BRYAN, Senior Circuit Judge:

The issue here is whether Ocean Ship Supply Limited (Ocean Ship) held such a maritime lien as would warrant an *in rem* seizure of the appellee, M/V Leah (the Leah), in the Port of Charleston, South Carolina. The Federal Court for the District of South Carolina, Hawkins, J., presiding, concluded that no maritime lien existed and gave summary judgment against Ocean Ship. Furthermore, the Court sustained the Leah's counterclaim charging wrongful seizure of her and asking damages of Ocean Ship. We affirm in part and reverse in part.

I

Ocean Ship is a Canadian corporation with an office in Montreal, Canada. Its business is to provide food and other necessaries to sea going ships.

On January 20, 1980, the Leah, then named the Caribbean Klif, docked at the Port of Quebec, Canada. Subsequently, she took aboard various supplies which were ordered from and delivered by Ocean Ship. The order, worth in excess of $16,000, was placed by the Pilot Shipping Company of Athens, Greece, the Caribbean Klif's managing agent. The vessel then sailed without paying for the goods.

In August, 1980, the Caribbean Klif was sold to the Leon Finance Company and her name was changed to the Leah. Her registry was also changed from the Greek to the Honduran flag. At the time of the sale, the former owners of the Leah warranted to Leon Finance that the ship was free and clear of any liens or encumbrances.

Following the change in ownership, the Leah became due for her biannual docking and tail-shaft inspection. However, her new agent arranged to have the inspection delayed to permit one further cargo voyage from Turkey to Charleston, South Carolina. The delay was conditioned on the Leah's entering drydock immediately after the journey. Accordingly, the Leah sailed from Turkey and a firm drydocking date of November 20, 1980 was set for her in Mobile, Alabama.

Leon Finance received its first notice of Ocean Ship's claim for the supplies when the Leah arrived in Charleston. The notification came by telephone from Ocean Ship's New York affiliate, Atlantic Steamers Supply Company, to Leon Finance's Charleston counsel. Immediately, Leon's counsel requested that Atlantic Steamers delay potential legal proceedings until the vessel's former owners could be contacted.

Notwithstanding the owner's request that Ocean Ship defer legal action, the latter informed Leon Finance's counsel on November 13, 1980 that the ship would be arrested unless security was posted in the amount of the claim. On November 14, after learning that Ocean Ship had filed a complaint in the Federal Court for the District of South Carolina, Leon Finance offered a check in the amount of $18,792.48 as security in lieu of the Leah's detention. However, because the check was not certified and because a previous check from Leon Finance to a tugboat operator had been dishonored, Ocean Ship refused the security. The Leah was seized by Marshals that same evening.

On the morning of November 15, 1980, the owner of the Leah sought relief from

the arrest in the Federal Court. Judge Hawkins ordered the vessel released after the posting of security like that rejected by Ocean Ship on the previous afternoon. The Leah then departed Charleston for her dry-dock appointment in Mobile, but because of her late departure, she was unable to keep the November 20 assignment. Her place had been occupied by a ship in need of emergency repairs and the Leah was unable to enter drydock until November 30, 1980.

Responding to Ocean Ship's complaint, Leon Finance filed a counterclaim charging Ocean Ship with wrongful seizure of the Leah and asking damages assertedly occasioned by the arrest. Leon Finance also moved for summary judgment against Ocean Ship on the latter's claim for the supplies it had furnished the Leah (then the Caribbean Klif) in Quebec. The movant urged that Canadian law applied to this situation and, because such law cuts off any maritime lien once the beneficial ownership of a vessel changes hands, there was nothing on which to predicate the issuance of *in rem* process against the Leah.

In September 1981, Judge Hawkins upheld the motion for summary judgment, ruling that the law of Canada controlled in these circumstances and that Ocean Ship possessed no maritime lien against the Leah. Accordingly, he returned the security theretofore posted for the Leah's release.

As for the counterclaim regarding the wrongful seizure, Judge Hawkins, on April 14, 1982, after non-jury trial, agreed with Leon Finance. He then awarded damages of $1,300 for the vessel's expenses during the one day's arrest; $300 for one day's wharfage; $10,400 for ten day's additional operating expenses as a result of the delayed entry into drydock; and $5,000 in attorney's fees. The Judge also allowed the owner of the Leah, Leon Finance, $2,764.80 in interest on the bond used to free the Leah from arrest and $1,793.36 in prejudgment interest on all of the items of damage, except attorney's fees. This appeal followed.

## II

This action centers on the difference between the United States and the Canadian maritime lien statutes, and Ocean Ship's effort to have the United States law govern. The United States Maritime Lien Statute, 46 U.S.C. § 971, provides as follows:

> Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

The Maritime Lien Statute of Canada is identical to that of the United States, except for the additional provision that if the beneficial ownership of a ship changes after the furnishing of the goods or services, no maritime lien will lie against the new owner of the vessel.

Ocean Ship attempts to have the United States Maritime Lien Statute applied here through an extensive choice-of-law analysis. It presses that the District Judge erred in employing the principle of *lex loci contractus* to arrive at the use of Canadian law while, instead, he should have used the modern choice-of-law approach which weighs many factors in determining the law that should be utilized. The modern approach, Ocean Ship insists, leads to the law of the United States, giving Ocean Ship a maritime lien on the Leah. Moreover, it argues that even if the use of *lex loci contractus* was correct, the contract was made in the United States, pointing again to the existence of a maritime lien.

Ocean Ship fails again, however, irrespective of which choice-of-law rule is used. As for *lex loci contractus*, there is little doubt that the contract for supplying the Leah was created in Canada. While Ocean Ship asserts that such contract was formed in the United States with Atlantic Steamers (Ocean Ship's American affiliate), no evi-

dence bears this out. Although the Leah's agent may have arranged for the delivery of the goods through Atlantic Steamers,[1] the undisputed facts are that the goods were furnished by a Canadian corporation in a Canadian port to a non-American ship. For this reason, *lex loci contractus* would lead to the application of Canadian law and the invalidation of any maritime lien.

The modern choice-of-law approach also leads to the application of Canadian law. In *Gulf Trading & Transportation Co. v. Vessel Hoegh Shield*, 658 F.2d 363, 367 (5th Cir.1981), *cert. denied*, 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982), the Court listed the factors to be considered in determining which country's law to apply in the maritime lien situation. However, contrary to appellant's suggestion, none of these factors points to the employment of United States law, recalling again that we are dealing with a Canadian corporation, a Canadian port, and a foreign ship. That the Leah put in at a United States' port is simply a fortuitous incident in the context of this litigation. Without demonstration of more concrete ties to the United States, even the modern choice-of-law approach would dictate that Canadian law be used.

### III

The District Court's finding of wrongful seizure by Ocean Ship as set forth in the counterclaim was clearly incorrect. Under maritime law, while an action for wrongful seizure is allowable, there must be proof of malice or bad faith by the offender. *Frontera Fruit Company v. Dowling*, 91 F.2d 293, 297 (5th Cir.1937). Here, the record is devoid of any such evidence. Consequently, the damages granted by the District Court for the Leah's arrest must be rejected. We do conclude, however, that the Leah is entitled to recover from Ocean Ship her court costs together with interest on the deposit securing her release.

1. An affidavit in the record from an Executive Vice-President of Atlantic Steamers states that delivery of the goods was *arranged* through Atlantic Steamers. Interestingly, the affidavit does not state that the goods were *contracted* for with Atlantic Steamers for supply to the then Caribbean Klif.

AFFIRMED IN PART; REVERSED IN PART.