# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-10801

United States Court of Appeals
Fifth Circuit

**FILED**
November 5, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

$4,480,466.16 in funds seized from Bank of America account ending in 2653

      Defendant,

RETAIL READY CAREER CENTER INCORPORATED,

      Claimant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

*ON PETITION FOR PANEL REHEARING*

Before ELROD, WILLETT, and DUNCAN, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

The petition for panel rehearing is DENIED. We withdraw the previous opinion issued August 22, 2019, 936 F.3d 233, and substitute the following:

We address whether a claimant in a civil forfeiture proceeding may counterclaim for constitutional tort damages against the United States. The district court held a claimant may never file counterclaims of any kind. It adopted the First Circuit's reasoning that, because a forfeiture is an *in rem*

No. 18-10801

proceeding against property, there is no "claim" against a claimant that he may "counter." Although this reasoning has been adopted by several district courts and recently by the Sixth Circuit, we find it unpersuasive and decline to adopt it. We nonetheless affirm the district court's judgment dismissing the counterclaims for a different reason. The counterclaims here seek damages based on alleged Fourth and Fifth Amendment violations arising from the property seizure. The United States has not waived sovereign immunity for either claim. We therefore affirm the district court's judgment on the alternative ground that the counterclaims are barred by sovereign immunity.

I.

Appellant Retail Ready Career Center ("RRCC") was a private school in Texas offering a six-week "boot camp style" course to train students as Heating, Ventilation, and Air Conditioning ("HVAC") technicians.[1] According to RRCC, "[m]ost" students were "veterans who pa[id] for the course using their earned GI Bill benefit," but "courses were open to other participants" as well. In 2017, the United States Department of Veterans Affairs ("VA") began investigating whether RRCC had falsely claimed to be in compliance with the "85-15" rule. This rule prohibits the VA from approving a veteran's enrollment in a course "for any period during which more than 85 percent of the students enrolled in the course are having all or part of their tuition, fees or other charges paid for them by the educational institution or by VA[.]" 38 C.F.R. § 21.4201. The rule's purpose is to "minimize the risk that veterans' benefits will be wasted on educational programs of little value . . . and to prevent charlatans from grabbing the veterans' education money." *Cleland v. Nat'l Coll. of Bus.*, 435 U.S. 213, 219 (1978) (cleaned up).

---

[1] We draw these facts primarily from RRCC's verified claim, which we accept as true for purposes of reviewing the district court's grant of a motion to dismiss. *See Masel v. Villareal*, 924 F.3d 734, 743 (5th Cir. 2019).

No. 18-10801

In September 2017, federal warrants were issued to seize the money in RRCC's bank accounts—amounting to over $4.6 million—as the alleged proceeds of federal law violations. *See* FED. R. CIV. P., SUPPLEMENTAL RULE ("SUPP. RULE") G(3)(b) ("the court—on finding probable cause—must issue a warrant" to seize movable property not in government control).[2] In October 2017, the government filed a complaint *in rem* seeking forfeiture of the funds under various fraud and conspiracy statutes.[3] After receiving notice of the forfeiture action, RRCC filed a verified claim to the seized property. *See* 18 U.S.C. § 983(a)(4)(A) (providing that "[a]ny person claiming an interest in the seized property may file a claim asserting such person's interest in the property"); SUPP. RULE G(5)(a) (setting out claim requirements). In its verified claim, RRCC alleged that the seizure occurred without prior notice or hearing; caused "an immediate and devastating effect on RRCC's business"; and forced RRCC to "close the school," dismiss employees without pay, and fly students home lest they be "stranded in Texas." RRCC also included two "constitutional counterclaims," which alleged the seizure violated the Fourth and Fifth Amendments and sought "damages to compensate [RRCC] for the destruction of its business."

The government moved to dismiss RRCC's counterclaims under Federal Rule of Civil Procedure 12(b)(6). Relying principally on the First Circuit's

---

[2] The government also seized other property not relevant to this appeal, including over $100,000 from five other bank accounts; real property located in Dallas, Texas; and seven luxury vehicles.

[3] *See, e.g.*, 18 U.S.C. § 981(a)(1)(C) (providing "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of [certain federal laws]" is "subject to forfeiture to the United States"); *id.* § 981(a)(1)(D) (providing "[a]ny property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of [federal fraud statutes]" is "subject to forfeiture to the United States"); *id.* § 982(a)(3) (providing a court shall order that a person convicted of a federal fraud offense forfeit to the United States any property "which represents or is traceable to the gross receipts obtained, directly or indirectly, as a result of such violation").

decision in *United States v. One Lot of U.S. Currency ($68,000)*, 927 F.2d 30 (1st Cir. 1991) ("*$68,000*"), the government argued that "claimants in civil-forfeiture cases may not file counterclaims against the United States, as they are merely claimants, not the party against which the suit is directed." The district court noted the parties had not cited "any binding Fifth Circuit authority" on this question, but found "persuasive" the First Circuit's reasoning in *$68,000*, which had been followed by several district courts from other circuits.[4] The district court therefore granted the government's motion to dismiss RRCC's counterclaims, "hold[ing] that, as a claimant in an *in rem* civil forfeiture action, RRCC cannot bring a counterclaim."

Meanwhile, the government struggled to state an adequate claim against RRCC's funds under the forfeiture rules. The district court dismissed the government's first amended complaint, finding its allegations insufficiently specific. The second amended complaint met the same fate. *See, e.g.*, *United States v. $4,480,466.16 In Funds Seized*, 2018 WL 4096340, at \*3 (N.D. Tex. Aug. 28, 2018) (ruling allegations in second amended complaint were "insufficient to comply with Supp[lemental] R[ule] G(2)'s requirement that the complaint must 'state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial'"); SUPP. RULE G(2)(f). The parties continue to litigate that issue below.[5]

---

[4] *See United States v. 8 Luxury Vehicles*, 88 F.Supp.3d 1332, 1337 (M.D. Fla. 2015); *United States v. Funds from Fifth Third Bank Account # 0065006695*, 2013 WL 5914101, at \*12 (E.D. Mich. Nov. 4, 2013); *United States v. $22,832.00 in U.S. Currency*, 2013 WL 4012712, at \*4 (N.D. Ohio Aug. 6, 2013); *United States v. $43,725.00 in U.S. Currency*, 2009 WL 347475 at \*1 (D.S.C. Feb. 3, 2009); *United States v. 1866.75 Board Feet*, 2008 WL 839792, at \*3 (E.D. Va. Mar. 25, 2008); *United States v. Assorted Comput. Equip.*, 2004 WL 784493, at \*2 (W.D. Tenn. Jan. 9, 2004).

[5] Following RRCC's appeal in this case, the government filed its third amended complaint, in response to which RRCC moved for dismissal and summary judgment. The district court has not ruled on those motions. Instead, the district court granted the government's motion to stay the forfeiture action for 120 days during the pendency of a

No. 18-10801

The issues before us on appeal concern only the fate of RRCC's counterclaims. On June 12, 2018, the district court entered a final judgment dismissing RRCC's counterclaims under Federal Rule of Civil Procedure 54(b), which RRCC timely appealed. We have jurisdiction to review that Rule 54(b) judgment. *See New Amsterdam Cas. Co. v. United States*, 272 F.2d 754, 756 (5th Cir. 1959) (dismissal of counterclaim, when plaintiff's claim is still pending, is non-appealable "absent a certificate under Rule 54(b)").

## II.

We review the district court's judgment dismissing RRCC's counterclaims *de novo*, "'accepting all well-pleaded facts [in RRCC's counterclaims] as true and viewing those facts in the light most favorable to [RRCC].'" *SGK Props., LLC v. U.S. Bank Nat'l Ass'n*, 881 F.3d 933, 943 (5th Cir. 2018) (quoting *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007)). We may affirm the district court's judgment "on any basis supported by the record." *Total Gas & Power North Am., Inc. v. FERC*, 859 F.3d 325, 332 (5th Cir. 2017) (citing *Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014)); *see also Lee v. Kemna*, 534 U.S. 362, 391 (2002) ("[I]t is well settled that an appellate tribunal may affirm a trial court's judgment on any ground supported by the record.").

## III.

We decline to endorse the district court's ruling that claimants in *in rem* civil forfeiture proceedings are barred, always and everywhere, from filing counterclaims. As we explain below, that broad holding relies on dubious reasoning in a First Circuit opinion that overlooks the procedural rights of claimants in *in rem* forfeiture actions and that conflicts with longstanding

---

related, ongoing criminal investigation. The stay expired June 6, 2019, at which point the government moved to extend the stay for an additional 120 days. That motion is pending before the district court.

practice in *in rem* admiralty cases. Nonetheless, we affirm the district court's judgment on the narrower ground that RRCC's constitutional damages claims are barred by sovereign immunity.

### A.

The district court relied heavily on the First Circuit's decision in *$68,000*, which concerned an *in rem* forfeiture action against a cocaine-tainted Lincoln Town Car. 927 F.2d at 31–32. The claimant, Castiello, sought to retrieve a "portable telephone" from the car by "fil[ing] what he termed a 'counterclaim' for [its] return." *Id.* at 34. The First Circuit identified multiple flaws in Castiello's position. For instance, the court pointed out that, because the forfeiture warrant did not even encompass the telephone, Castiello's "personal property claim had no place in th[e] action." *Id.* at 35.[6] But the court also laid down this broader reason for rejecting Castiello's "counterclaim":

> By definition, a counterclaim is a turn-the-tables response directed by one party ("A") at another party ("B") in circumstances where "B" has earlier lodged a claim in the same proceeding against "A." A forfeiture action is *in rem*, not *in personam*. The property is the defendant. Since no civil claim was filed by the government against Castiello—indeed, rather than being dragooned into the case as a *defendant*, he intervened as a *claimant*—there was no "claim" to "counter." Thus, Castiello's self-styled counterclaim was a nullity, and the court below appropriately ignored it.

---

[6] Had the warrant included the telephone, the court stated it was "at least arguable" that Castiello could "replevy" it "within the contours of the government's forfeiture action." *Id.* at 34 n.7 (citing *United States v. Castro,* 883 F.2d 1018 (11th Cir. 1989); *Goodman v. Lane,* 48 F.2d 32 (8th Cir. 1931)). The court also pointed out that, regardless, Castiello remained free to retrieve the phone "administratively, by a motion in [his] underlying criminal case, or by bringing an independent civil action." *Id.* at 35 (cleaned up) (citing 19 U.S.C. § 1618; FED. R. CRIM. P. 41(e); *United States v. Wilson,* 540 F.2d 1100, 1104 (D.C. Cir. 1976)).

*$68,000*, 927 F.2d at 34. This citationless half-paragraph furnished the sole rationale for the district court's holding below that "a claimant in an *in rem* civil forfeiture action . . . cannot bring a counterclaim."

We readily grasp why the district court disposed of RRCC's counterclaims on this basis. As the court pointed out, the First Circuit's musing in *$68,000* has metastasized to several district courts, and also recently to the Sixth Circuit. *See Zappone v. United States*, 870 F.3d 551, 561 (6th Cir. 2017) (stating that owner in civil forfeiture action may "intervene" but "may not assert counterclaims against the United States") (citing *$68,000*). And the district court had no binding authority from our court, because we have never squarely addressed the issue. We do so now. Examining the issue as one of first impression, we respectfully reject the First Circuit's broad rationale for barring counterclaims in *in rem* civil forfeiture proceedings.

First, the fact that a forfeiture proceeding is "*in rem*, not *in personam*" does not determine a claimant's rights in the proceeding. The forfeiture rules allow a claimant to take numerous actions respecting the seized property, even though the proceeding is "*in rem*." To begin with, a claimant may "file a claim" to protect his interests in the property.[7] He may also file: (1) an answer to the government's complaint, SUPP. RULE G(5)(b); (2) a Rule 12 motion, *id.*; (3) objections to government interrogatories, SUPP. RULE G(6)(b); (4) a motion to suppress use of the seized property as evidence, SUPP. RULE G(8)(a); and (5) a motion raising a defense under the Excessive Fines Clause of the Eighth Amendment, SUPP. RULE G(8)(e); *see also* 18 U.S.C. § 983(g) (claimant may file

---

[7] *See* 18 U.S.C. § 983(a)(4)(A) (providing "any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules"); SUPP. RULE G(5)(a)(i) (providing "[a] person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending").

a "petition" to "determine whether the forfeiture was constitutionally excessive"). And the civil forfeiture statute lets claimants do other things, such as: (1) raise and prove an "innocent owner" defense, 18 U.S.C. § 983(d); (2) move to set aside the forfeiture for lack of notice, *id.* § 983(e); and (3) seek immediate release of seized property, *id.* § 983(f).[8] The point being: If a claimant can do all this in *in rem* forfeiture proceedings, it cannot be that he is barred from filing counterclaims simply because forfeitures are "*in rem* and not *in personam.*"

Thus, contrary to the First Circuit's view in *$68,000*, the answer to this puzzle does not lie in the brute fact that, in a forfeiture proceeding, "[t]he property is the defendant." 927 F.2d at 34. That truism begs the question what *other* actors in the proceeding (besides the property itself) may assert rights arising out of the forfeiture. *See, e.g.*, *United States v. All Funds In Account Nos. 747.034/278, 747.009/278, & 747.714/278 Banco Espanol de Credito, Spain*, 295 F.3d 23, 25 (D.C. Cir. 2002) (observing that "[c]ivil forfeiture actions are brought against property, not people," but that "[t]he owner of the property may intervene to protect his interest"). The multiple procedural options given claimants by the civil forfeiture rules sit uneasily with the notion that a claimant can never bring counterclaims in those proceedings.

Second, the reasoning in *$68,000* overlooks the rules governing intervenors. Rule 24 allows intervention of right to "anyone" who, *inter alia*, "claims an interest relating to the property . . . that is the subject of the action." FED. R. CIV. P. 24(a)(2). That sounds quite like the position of a claimant in a

---

[8] *See generally* Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*, 27 J. Legis. 97, 97, 125–151 (2001) ("Casella") (summarizing "comprehensive revision" to forfeiture procedures enacted by Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. 106-185, 117 Stat. 202 (2000)).

No. 18-10801

forfeiture proceeding; indeed, the forfeiture rules treat a claimant in precisely those terms. *See* 18 U.S.C. § 983(a)(4)(A) (allowing "any person claiming an interest in the seized property" to file a claim); SUPP. RULE G(5)(a)(i) (allowing "[a] person who asserts an interest in the defendant property" to contest the forfeiture). Moreover, our cases have described "claimants" in forfeiture proceedings as "intervenors."[9] In *$68,000* itself, the First Circuit said Castiello "intervened as a claimant." 927 F.2d at 34. Likewise here, the government described RRCC as "an intervening party." The kinship between "claimants" and "intervenors" does not support a blanket rule barring claimants' counterclaims in forfeiture proceedings. Quite the opposite. As we have explained, "[u]nder federal law, an intervenor of right 'is treated as he were an original party and has equal standing with the original parties.'" *Brown v. Demco*, 792 F.2d 478, 480–81 (5th Cir. 1986) (quoting *Donovan v. Oil, Chem., and Atomic Workers Int'l Union*, 718 F.2d 1341, 1350 (5th Cir. 1983)); *see also* 7C WRIGHT & MILLER, FED. PRAC. & PROC. § 1920 (3d ed.) (explaining an intervenor "has equal standing with the original parties" and "is entitled to litigate fully on the merits once intervention has been granted") (citing *Gilbert v. Johnson*, 601 F.2d 761, 768 (5th Cir. 1979) (Rubin, J., specially concurring)).[10]

---

[9] *See, e.g.*, *United States v. An Article of Drug Consisting of 4,680 Pails*, 725 F.2d 976, 981 (5th Cir. 1981) (observing, "[a]fter seizure pursuant to a warrant for arrest *in rem*, Pfizer intervened as claimant and filed an answer"); *United States v. 110 Bars of Silver*, 508 F.2d 799, 801 (5th Cir. 1975) (per curiam) ("This forfeiture proceeding stems from intervenor's conviction for melting down United States coins[.]"); *Westfall Oldsmobile, Inc. v. United States*, 243 F.2d 409, 411 (5th Cir. 1957) (describing owner contesting automobile forfeiture as "claimant-intervenor").

[10] To be sure, the Supplemental Rules applicable to forfeiture actions do not expressly provide that a claimant may file counterclaims. But "[t]he Federal Rules of Civil Procedure also apply to [*in rem* forfeiture] proceedings except to the extent that they are inconsistent with these Supplemental Rules." SUPP. RULE A(2). We discern nothing in the Supplemental Rules inconsistent with the general proposition that claimants may file counterclaims in forfeiture proceedings. Relatedly, one district court has suggested that Rule 13(d) implicitly

Third and finally, adopting the First Circuit's reasoning in *$68,000* would conflict with practice in admiralty cases, which have long entertained counterclaims (or their equivalents) in *in rem* proceedings. *See, e.g.*, *Superior Derrick Services, LLC v. LONESTAR 203*, 547 F. App'x. 432, 437 (5th Cir. 2013) (unpublished) (discussing merits of counterclaim asserted in *in rem* proceeding); *Incas & Monterey Printing and Packaging, Ltd. v. M/V Sang Jin*, 747 F.2d 958, 963–964 & n.16 (5th Cir. 1984) (considering counterclaims by time-charterer of seized vessel in *in rem* action); *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330, 335 (5th Cir. 1978) (considering United States' claims when it "intervened in plaintiffs' in rem action as a party defendant and filed a counterclaim asserting a property right in the res"); *Ellis Diesel Sales & Serv., Inc. v. M/V On Strike*, 488 F.2d 1095 (5th Cir. 1973) (per curiam) (considering *in rem* action in which "[d]efendant filed a counterclaim alleging damages negligently caused to the vessel")[11]; *see also, e.g.*, *Compania Naviera Vascongada v. United States*, 354 F.2d 935, 940 (5th Cir. 1966) (addressing merits of "libel" and "cross-libel" in

---

bars claimants in forfeiture proceedings from counterclaiming against the United States. *See United States v. 8 Luxury Vehicles*, 88 F.Supp.3d at 1334–1335, 1337 (M.D. Fla. 2015). We disagree. Rule 13 merely confirms that allowing counterclaims does not "expand" any waivers of sovereign immunity by the United States. *See* FED. R. CIV. P. 13(d) ("These rules do not expand the right to assert a counterclaim—or to claim a credit—against the United States or a United States officer or agency."). We address sovereign immunity *infra*.

[11] *See also, e.g.*, *Puerto Rico Ports Auth. v. Barge Katy-B, O.N. 606665*, 427 F.3d 93, 99, 100 (1st Cir. 2005) (noting intervenor's counterclaim for damages in *in rem* proceeding); *Hawkspere Shipping Co., Ltd. v. Intamex, S.A.*, 330 F.3d 225, 230 (4th Cir. 2003) (considering counterclaim by claimants in *in rem* proceeding for wrongful arrest of vessel); *Bradford Marine, Inc. v. M/V Sea Falcon*, 64 F.3d 585, 586–587 (11th Cir. 1995) (reviewing attorney's fees awarded on a counterclaim in an *in rem* action); *Teyseer Cement Co. v. Halla Maritime Corp.*, 794 F.2d 472, 478 (9th Cir. 1986) (considering whether counterclaim by intervenor in *in rem* proceeding waived personal jurisdiction); *Ocean Ship Supply, Ltd. v. MV Leah*, 729 F.2d 971, 973 (4th Cir. 1984) (considering counterclaim for wrongful seizure and damages incurred therein); *Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil*, 704 F.2d 1038, 1039 (8th Cir. 1983) (reviewing district court's decision to sever counterclaims in an *in rem* action for trial by jury).

No. 18-10801

*in rem* proceeding)[12]; *and see, e.g.,* THOMAS J. SCHOENBAUM, 2 ADMIRALTY & MAR. LAW § 21:6 (6th ed. 2018) ("SCHOENBAUM") (explaining that a claimant must prove "demonstrable bad faith or malice" to succeed on a wrongful seizure counterclaim).

Moreover, the modern procedural rules applicable to admiralty and maritime claims plainly foresee counterclaims in *in rem* and *quasi in rem* proceedings. For instance, Supplemental Rule E(7)—which applies to "actions *in rem* and *quasi in rem*"—sets forth the circumstances under which a plaintiff must furnish "security" for damages demanded in a "counterclaim." *See* SUPP. RULE E(7)(a), (b)[13]; *id.,* advisory committee notes (2000) (explaining that "[s]ubdivision (7)(a) is amended to make it clear that a plaintiff need give security to meet a counterclaim only when the counterclaim is asserted by a

---

[12] The older admiralty term "cross-libel" is equivalent to "counterclaim": "With the merger of law and admiralty in 1966, admiralty's classic and ancient phraseology of libels and cross-libels was replaced with the more mundane terminology of claims and *counterclaims*[.]" *Titan Nav., Inc. v. Timsco, Inc.,* 808 F.2d 400, 403 (5th Cir. 1987) (emphasis added); *see also* 3A BENEDICT ON ADMIRALTY § 306 (2019) ("Rule 13, Federal Rules of Civil Procedure which treats of counterclaims and cross-claims is the modern counterpart of the old admiralty cross-libels. While the nomenclature has changed the admiralty practice has basically remained the same.").

[13] Supplemental Rule E(7) provides as follows:

**(7) Security on Counterclaim.**

**(a)** When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court, for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

**(b)** The plaintiff is required to give security under Rule E(7)(a) when the United States or its corporate instrumentality counterclaims and would have been required to give security to respond in damages if a private party but is relieved by law from giving security.

11

No. 18-10801

person who has given security to respond in damages in the original action").[14]
Given those textual cues in the Supplemental Rules, it would seem anomalous
to say that counterclaims are always out-of-bounds in *in rem* proceedings. And
yet the First Circuit's rule would bar counterclaims in forfeiture actions
precisely *because* they are "*in rem*, not *in personam*" proceedings. *$68,000*, 927
F.2d at 34. That overbroad proposition clashes with venerable admiralty
practice and modern maritime rules, and we decline to endorse it.

In sum, we respectfully decline to adopt the reasoning in *$68,000* that,
because "the property is the defendant" in a forfeiture proceeding, a claimant
with interests in that property may never file a counterclaim. If RRCC's
counterclaims are to be dismissed, it must be for a different reason.[15]

B.

We affirm the district court's judgment on a narrower ground. *See, e.g.,*
*AT&T, Inc. v. United States*, 629 F.3d 505, 510 (5th Cir. 2011) ("[i]t is well

---

[14] *See also, e.g., Transportes Caribe, S.A. v. M/V Trader*, 860 F.2d 637 (5th Cir. 1988)
(affirming district court's order to post countersecurity under Rule E); *Titan Nav.*, 808 F.2d
at 402–03 & n.2 (discussing development of Supplemental Rule E(7)); *Seaboard & Carribean*
*Transp. Corp. v. Hafen-Dampfschiffahrt A.G. Hapag-Hadac Seebader-Dienst*, 329 F.2d 538,
539–541 (5th Cir. 1964) (applying Rule E precursor, Admiralty Rule 50, to a "cross-libelant"
in a "libel *in rem*" proceeding); *and see also* SCHOENBAUM § 21:6 (explaining that "[s]ubsection
7 of [Supplemental Rule E] contemplates the filing of a counterclaim against the party
initiating the seizure"); 4 BENEDICT ON ADMIRALTY § 2.23 (2019) (illustrating how a court
may consider "whether or not a counterclaim has merit for the purposes of determining
whether or not a counterclaimant is entitled to countersecurity" under Rule E(7)).

[15] In addition to rejecting its reasoning, we note that *$68,000* addressed a scenario
quite different from ours. As the First Circuit observed, the forfeiture warrant in that case
did not encompass the property that was the subject of the claimant's "counterclaim." *See* 927
F.2d at 34 n.7 ("This is not a case where the claimant seeks the return of the same property
which the government seeks to forfeit."). Had the warrant included the property, the First
Circuit acknowledged, the claimant might have sought to "replevy" the property in the
forfeiture action. *Id.* The Sixth Circuit's decision in *Zappone*—the only circuit case to have
adopted the First Circuit's reasoning—is also procedurally distinguishable. That case
affirmed the dismissal of untimely "counterclaims" asserting *Bivens* claims against IRS
agents who seized property in a forfeiture action. 870 F.3d at 554. But the IRS agents were
not even parties in the forfeiture proceeding, making a "counterclaim" against them
particularly tenuous.

settled" that a court of appeals may affirm "on any ground supported by the record") (citation omitted). On appeal, the government argues in the alternative that the United States has not waived its sovereign immunity with respect to the particular claims asserted in RRCC's counterclaims—damages claims for violations of the Fourth and Fifth Amendments—and that those claims are therefore barred. We agree.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941); 14 WRIGHT, MILLER & COOPER, FED. PRAC. & PROC. § 3654); *see also, e.g.*, *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 251–52 (5th Cir. 2006) (en banc) ("The Constitution contemplates that, except as authorized by Congress, the federal government and its agencies are immune from suit.") (citing *Hercules, Inc. v. United States*, 516 U.S. 417, 422 (1996)). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed," and any waiver "will be strictly construed, in terms of its scope, in favor of the sovereign." *Doe v. United States*, 853 F.3d 792, 796 (5th Cir. 2017) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Lane v. Peña*, 518 U.S. 187, 192 (1996)) (internal quotation marks omitted). The government argues that RRCC has identified no statute unequivocally waiving the United States' immunity for the damages claims in RRCC's counterclaims. Specifically, RRCC seeks damages arising from the "unreasonable seizure" of its bank accounts in violation of the Fourth Amendment and from the lack of "notice and hearing" in violation of the Fifth Amendment's Due Process Clause. The government is correct.

In its reply brief, RRCC attempts to identify the required waiver in 28 U.S.C. § 2680(c). In that provision, Congress "re-waived" the United States' sovereign immunity under the Federal Tort Claims Act ("FTCA") for certain

property damages claims arising out of forfeitures.[16] *See, e.g., Smoke Shop, LLC v. United States*, 761 F.3d 779, 782 (7th Cir. 2014) (explaining that in the 2000 CAFRA reforms Congress "'rewaived' the government's immunity" under the FTCA "for tort actions stemming from law-enforcement detentions of property" under specific circumstances); *Foster v. United States*, 522 F.3d 1071, 1075 (9th Cir. 2008) (explaining that "CAFRA . . . restored the waiver of sovereign immunity—or 're-waived' sovereign immunity—with respect to certain forfeiture-related seizures"). What RRCC overlooks, however, is that the FTCA's immunity waiver does not extend to "constitutional torts" like the Fourth and Fifth Amendment damages claims pled in RRCC's counterclaims. We have squarely recognized that "[c]onstitutional torts . . . do not provide a proper predicate for an FTCA claim." *Spotts v. United States*, 613 F.3d 559, 565 n.3 (5th Cir. 2010) (citing *FDIC v. Meyer*, 510 U.S. 471, 478 (1994)); *see also,*

---

[16] Section 2680(c) provides, in relevant part, that the FTCA immunity waiver applies "to any claim based on the injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if—

> **(1)** the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
>
> **(2)** the interest of the claimant was not forfeited;
>
> **(3)** the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
>
> **(4)** the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law."

28 U.S.C. § 2680(c)(1)–(4). The subsection cross-references 28 U.S.C. § 1346(b), which in relevant part provides that federal district courts have exclusive jurisdiction over post-January 1, 1945 money damages claims against the United States for

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.* § 1346(b)(1).

*e.g.*, *Coleman v. United States*, 912 F.3d 824, 835 (5th Cir. 2019) (the "source of substantive liability under the FTCA" must be the "law of the State" and not federal law) (citing *Meyer*, 510 U.S. at 478); *Sanchez v. Rowe*, 870 F.2d 291, 295 (5th Cir. 1989) (explaining "the FTCA does not provide a cause of action for constitutional torts" because "by definition constitutional torts are not based on state law") (cleaned up). Thus, the FTCA waiver does not encompass the constitutional damages claims in RRCC's counterclaims, and the district court therefore lacked jurisdiction over them.[17]

RRCC also argues that the United States waives sovereign immunity simply by "initiat[ing] an *in rem* proceeding." RRCC cites no authority supporting that grandiose proposition. It points only admiralty cases allowing a limited cross-libel against the United States when the United States sues another vessel for collision damages. *See United States v. The Thekla*, 266 U.S. 328 (1924); *United States v. The Paquete Habana*, 189 U.S. 453 (1903); *The Siren*, 74 U.S. 152 (1868)*; see also, e.g.*, *United States v. Shaw*, 309 U.S. 495,

---

[17] We do not decide whether RRCC could bring valid FTCA claims as counterclaims in a civil forfeiture proceeding. *See, e.g., Life Partners Inc. v. United States*, 650 F.3d 1026, 1029–1030 (5th Cir. 2011) (discussing administrative exhaustion requirements which are "a prerequisite to suit under the FTCA") (citing 28 U.S.C. § 2675(a); *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222–23 (5th Cir. 1989)). We decide only that the specific claims asserted in RRCC's counterclaims fall outside the CAFRA re-waiver and are therefore barred by sovereign immunity. Additionally, we note that neither the Tucker Act nor its companion, the Little Tucker Act, waive sovereign immunity over RRCC's claims. The Tucker Act provides a judicial avenue for "any claim against the United States founded . . . upon the Constitution." 28 U.S.C. § 1491(a)(1); *see also United States v. Bormes*, 568 U.S. 6, 11 (2012) (discussing Tucker Act). The waiver in the Tucker Act, however, "has been limited to apply only to the Takings Clause . . . because only that clause contemplates payment by the federal government." *Rothe Dev. Corp. v. U.S. Dept. of Defense*, 194 F.3d 622, 625 (5th Cir. 1999). Here, RRCC does not invoke the Tucker Act, and its Fifth Amendment claims are premised on an alleged due process violation, not the Takings Clause. *See, e.g., Bellamy v. United States*, 7 Cl. Ct. 720, 723 (1985) (explaining claims court "has no jurisdiction over claims based upon the Due Process and Equal Protection guarantees of the Fifth Amendment, because these constitutional provisions do not obligate the Federal Government to pay money damages" (quoting *Carruth v. United States*, 224 Ct. Cl. 422, 445 (1980) (cleaned up)).

502–03 (1940) (explaining that, in such cases, "it is necessary to determine the cross-libel as well as the original libel to reach a conclusion as to liability for the collision").[18] But RRCC directs us to no authority supporting the proposition that this distinct admiralty rule waives the United States' sovereign immunity whenever it institutes a civil forfeiture proceeding. Nor does RRCC direct us to any unambiguous statutory waiver of the United States' immunity under such circumstances.[19] As we have already explained, Congress did enact an unambiguous immunity waiver with respect to forfeiture proceedings, *see* 28 U.S.C. § 2680(c)(1)–(4), but it has no application here.

Finally, RRCC claims we cannot reach sovereign immunity for two reasons. First, RRCC points out the government did not raise the issue below. That is irrelevant: Whether the United States' sovereign immunity has been waived is a question of subject matter jurisdiction we can address for the first time on appeal. *See, e.g., Lewis v. Hunt*, 492 F.3d 565, 568 (5th Cir. 2007) (appellate court may consider United States' sovereign immunity *sua sponte*, "[a]lthough the parties and the district court did not raise [it]"); *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006) (lack of waiver of United States' sovereign immunity under FTCA "deprives federal courts of subject matter jurisdiction"). Second, RRCC claims that addressing sovereign immunity would convert a without-prejudice dismissal below into a with-prejudice

---

[18] *See also generally* 2 AM. JUR. 2d ADMIRALTY § 44 ("Whenever the United States sues for damage inflicted on its vessel or cargo, it impliedly waives its exemption from admiralty jurisdiction as to cross libels or counterclaims arising from the same transaction.") (citing *The Thekla*, 266 U.S. 328; *The Western Maid*, 257 U.S. 419 (1922)).

[19] RRCC incorrectly points to the immunity waiver in 46 U.S.C. § 30903(a), but that statute also pertains only to certain admiralty claims involving the United States. *See, e.g.*, *MS Tabea Schiffahrtsgesellschaft MBH & Co. KG v. United States*, 636 F.3d 161, 165 n.1 (5th Cir. 2011) (explaining that "[t]he Suits in Admiralty Act (SAA) . . . provides the appropriate waiver for maritime tort claims against the United States") (citing 46 U.S.C. § 30903).

dismissal on appeal, which would be inappropriate without a cross-appeal. *See, e.g.*, *Jennings v. Stephens*, 135 S. Ct. 793, 798 (2015) (explaining "an appellee who does not cross-appeal may not 'attack the [district court's] decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary'") (quoting *United States v. American Railway Express Co.*, 265 U.S. 425, 435 (1924)). RRCC is again mistaken. Claims barred by sovereign immunity are dismissed without prejudice, not with prejudice. *See, e.g.*, *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) (explaining that "[b]ecause sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice"); *see also, e.g.*, *United States v. Texas Tech Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999) (same, citing *Warnock*); 9 WRIGHT & MILLER, FED. PRAC. & PROC. § 2373 (because dismissal for lack of jurisdiction does not reach merits, claim "must be considered to have been dismissed without prejudice."). Thus, we may, and do, rule that RRCC's counterclaims are barred by sovereign immunity.[20]

## IV.

Congress has provided various remedies for claimants like RRCC who assert that the United States has wrongfully seized their property in forfeiture proceedings. *See, e.g.*, *United States v. Khan*, 497 F.3d 204, 208 (2nd Cir. 2007) (by reforming the forfeiture laws in CAFRA, "Congress was reacting to public outcry over the government's too-zealous pursuit of civil and criminal

---

[20] Because we resolve the appeal on sovereign immunity grounds, we do not address the government's argument that RRCC's damages counterclaims are barred by 28 U.S.C. § 2465(b)(2)(A). Part of a provision addressing government liability for costs, fees, and interest when a claimant prevails in a forfeiture proceeding, § 2465(b)(2)(A) provides that "[t]he United States shall not be required to disgorge the value of any intangible benefits nor make any other payments to the claimant not specifically authorized by this subsection." 28 U.S.C. § 2465(b)(2)(A).

forfeitures"). Under certain circumstances, claimants who "substantially prevail[ ]" in a forfeiture action may recover attorneys' fees, costs, and interest. *See* 28 U.S.C. § 2465(b)(1)(A)–(C). In some cases, they may sue the United States for property damages under the FTCA. *See* 28 U.S.C. § 2680(c)(1)–(4). What claimants may not do, however, is sue the United States for constitutional torts arising out of the property seizure. Congress has not waived the United States' sovereign immunity for damages claims of that nature. Because RRCC's counterclaims sought precisely those kinds of damages, we hold its counterclaims are barred by sovereign immunity.

AFFIRMED

18